**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

WILLIE SIMMONS,

     Plaintiff,

     v.

SAM CLINE, *et al.*,

     Defendants.

Case No. 20-3096-HLT-ADM

## MEMORANDUM AND ORDER

This matter comes before the court on several related motions filed by pro se plaintiff Willie Simmons ("Simmons"): (1) a renewed Motion for a Medical Malpractice Screening Panel filed on December 21, 2020 (ECF 35, the "Renewed Motion"); (2) a supplement to the Renewed Motion filed on January 11, 2021 (ECF 44, the "Supplement"), which the court construes as including both (a) a motion to compel production of documents and (b) a motion for appointment of counsel; (3) a second renewed Motion for a Medical Malpractice Screening Panel filed on March 11, 2021 (ECF 59, the "Second Renewed Motion"); and (4) a motion for an order requiring the Kansas Department of Corrections ("KDOC") to disburse funds from Simmons' inmate trust account to pay for a screening panel (ECF 72).

For the reasons discussed below, the court grants Simmons' Renewed and Second Renewed Motions to the extent that the court will convene two screening panels to review Simmons' medical malpractice claim: one as to defendant William Wade ("Wade"), an Advanced Practice Registered Nurse ("APRN"), and another separate screening panel as to defendant Dr. Gordon Harrod ("Harrod"). Simmons, Wade, and Harrod are directed to designate healthcare providers to serve as panel members in accordance with the schedule set forth in this order. The

court will thereafter determine if it is appropriate to appoint a panel chairperson and provide further direction to the parties. If Simmons does not meet his panel-related obligations, the court will likely quash the screening panels. These motions are otherwise denied. The court also denies the requests for relief contained in the Supplement for the reasons set forth below. Simmons may renew his request to appoint counsel at a later procedural juncture. Simmons' motion for an order requiring KDOC to disburse funds from Simmons' inmate trust account is denied for the reasons set forth below, including that no screening panel-related costs are currently due.

## I.      BACKGROUND

Simmons is incarcerated at El Dorado Correctional Facility. His broad complaint alleges violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act, a 42 U.S.C. § 1983 claim for violations of his Eighth Amendment rights, a negligence claim, and a medical malpractice claim. (ECF 10.) Simmons names Wade and Harrod as defendants, as well as Sam Cline ("Cline"), who is the Warden of the El Dorado Correctional Facility, and Corizon Health, Inc. ("Corizon"), which contracts with KDOC to provide medical services to inmates.

Simmons previously filed a motion for a medical malpractice screening panel pursuant to the Kansas Medical Malpractice Screening Panels Act, KAN. STAT. ANN. § 65-4901 *et seq.* (the "Act"). The single-page motion generally alleged that all defendants failed to provide Simmons with medical treatment on a variety of complaints that appeared to go beyond the scope of the malpractice claim Simmons pleaded. The court denied that motion in an order dated September 29, 2020. *See Simmons v. Cline*, No. 20-3096-DDC-ADM, 2020 WL 5802077 (D. Kan. Sept. 29, 2020). The court denied the motion with respect to Corizon and Cline because they are not "healthcare providers" subject to the Act, and Simmons did not assert a medical malpractice claim against Cline. *Id.* at *1-*2. As to Wade and Harrod, the court noted that it was unclear whether

Simmons was alleging these defendants personally rendered Simmons care (or decided not to) or how specifically their respective actions deviated from the standard of care. *Id.* at *2. The court therefore denied Simmons' motion with respect to Wade and Harrod but allowed Simmons to renew his motion as to these defendants. *Id.* at *2, *4.

Simmons thereafter filed the Renewed Motion and the Supplement. After Harrod entered his appearance in the case in late February,[1] the court set a briefing schedule on the Renewed Motion. Simmons then filed the Second Renewed Motion as well as the motion for an order requiring the KDOC to disburse funds from his account to pay for a screening panel.

## II.    THE KANSAS MEDICAL MALPRACTICE SCREENING PANELS ACT

The Act establishes a mechanism by which the court may convene a screening panel on Kansas medical malpractice claims. *See* KAN. STAT. ANN. § 65-4901; *Webber v. Schmidt*, 119 P.3d 1187, 2005 WL 2347803, at *3 (Kan. Ct. App. 2005) ("[A] medical malpractice cause of action is a condition precedent to convening a medical malpractice screening panel."). A party may request a screening panel "no later than 60 days after the defendant subject to the screening panel is served with process." KAN. S.C. RULE 142(c). If the court determines that convening a panel is appropriate, the plaintiff and defendant must each designate a healthcare provider to serve on the panel. KAN. STAT. ANN. § 65-4902. The state agency responsible for licensing a particular group of healthcare providers is responsible for maintaining and making available a current list of those providers "who are willing and available to serve on the screening panel." KAN. STAT. ANN. § 65-4901(c). After the parties make their individual designations, they must then jointly designate

---

[1] A Waiver of Service of Summons was issued as to Harrod on September 9, 2020. When he did not enter an appearance by December 21, the court ordered service be attempted by the United States Marshals Service. (ECF 36.)

another panel member.  KAN. STAT. ANN. § 65-4902.  The court is responsible for selecting an attorney to act as the panel's chairperson.  KAN. STAT. ANN. § 65-4901(b).

Within thirty days after the court convenes the panel, the plaintiff must provide the chairperson and opposing parties with "all medical records, medical care facility records, x-rays, test results, treatises, documents, tangible evidence, and written contentions on which the plaintiff relies."  KAN. S.C. RULE 142(h).  These written contentions must include a statement of factual and legal issues, including citation to authority.  KAN. S.C. RULE 142(j).  Thirty days after plaintiff submits documents to the chairperson, the defendant(s) must provide the chairperson and plaintiff with "all medical records, medical care facility records, x-rays, test results, treatises, documents, tangible evidence, and written contentions not yet provided on which the defendant relies."  KAN. S.C. RULE 142(i).

After receiving the parties' submissions, the screening panel decides "whether there was a departure from the standard practice of the health care provider specialty involved and whether a causal relationship existed between the damages suffered by the [plaintiff] and any such departure."  KAN. STAT. ANN. § 65-4903.  The panel may seek additional information or legal authority, if required, "limited to the factual issues stated in the parties' contentions."  KAN. S.C. RULE 142(l)(5).  After the panel renders its decision, it prepares a written opinion containing its findings.  KAN. S.C. RULE 142(l)(10).  "Costs of the panel including travel expenses and other expenses of the review shall be paid by the side in whose favor the majority opinion is written."  KAN. STAT. ANN. § 65-4907(b).

As the court previously explained in its order dated September 29, the Act's primary purpose is to encourage early settlement.  *See Simmons*, 2020 WL 5802077, at *3.  The Act does not provide a litigant with any particular relief, and it is not an alternative mechanism for

appointing an expert witness. *Id.* Although the panel's decision may be introduced in later proceedings, a future factfinder is free to accept or reject its conclusions. *Id.* It is not an enforceable judgment and does not compel settlement of a claim or pending suit. *Id.*

## III. THE RENEWED AND SECOND RENEWED MOTIONS ARE GRANTED IN PART AND DENIED IN PART.

Simmons' operative complaint alleges that he was denied medical treatment for a rash or infection caused by exposure to black mold in the showers in the facility where he is incarcerated. (*See* ECF 10, at 19, 23, 32.)  He also alleges that he was denied medical treatment for his injured back after he slipped and fell in the shower in August and October 2019. (*See id.* at 22, 33.)  The court screened the complaint and allowed Simmons' medical negligence claims to proceed against Harrod, Wade, and Corizon.  (ECF 11, at 5-6.)  As explained above, the court denied Simmons' original motion for a medical malpractice screening panel, but allowed him to file a renewed motion with respect to his claims against Wade and Harrod.[2]  The court explained that any renewed motion "must specify the ways in which each individual allegedly deviated from the standard of care, and those allegations must be limited to the contours of what Simmons has alleged in the amended complaint." *Simmons*, 2020 WL 5802077, at *4.

### A. Wade and Harrod

Wade and Harrod argue that Simmons' request for a medical malpractice screening panel should be denied because he failed to correct the deficiencies identified in the court's prior order—namely, they contend that it is still unclear what duties Simmons alleges Wade and Harrod owed to Simmons and how they breached those duties.  (ECF 61, at 5-6; ECF 62, at 2-4.)  Because Simmons is proceeding pro se, the court must construe his filings liberally and hold them "to a less

---

[2] Simmons first requested a screening panel on May 5, 2020.  (*See* ECF 5.)  As noted in the September 29 order, the court considers this date for the purposes of the current renewed motions and will not deny them as untimely.

stringent standard than those drafted by attorneys." *Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir. 2006) (per curiam). Although the Renewed and Second Renewed Motions now before the court are not models of clarity, it appears that Simmons has attempted to comply with the court's directives. Simmons' Renewed Motion contends that Wade and Harrod refused to give him appropriate and timely medical treatment after he fell in the shower; failed to send him to a specialist for his back injury and pain; gave him ineffective pain medication to which he was allergic (Gabapentin); failed to give him pain medication; and denied him medical treatment for his rash allegedly caused by black mold. (ECF 35, at 1-4.) These allegations fall within the contours of the malpractice claim alleged in Simmons' operative complaint and are more clear than his prior motion, which only vaguely asserted that all defendants refused to provide him with appropriate and timely medical treatment.

Harrod correctly points out that "a medical malpractice cause of action is a condition precedent to convening a medical malpractice screening panel," *see Webber*, 2005 WL 2347803, at *3, and suggests that Simmons' screening panel request should be denied because he has failed to meet this condition precedent. (ECF 62, at 4.) But Simmons' contentions in the Renewed Motion set forth the ways in which he believes Wade and Harrod failed to provide him with medical treatment, and these types of allegations may form the basis of a malpractice action. *See, e.g.*, *Roberson v. Counselman*, 686 P.2d 149, 152 (Kan. 1984) (healthcare provider may be liable for failing to refer a patient); *Nash v. Wilkinson*, No. 89-1544-K, 1992 WL 163666, at *2 (D. Kan. June 19, 1992) (discussing a malpractice claim where the plaintiff alleged failure to order appropriate medication). The court already allowed Simmons' medical malpractice claim to proceed after screening. Since then, Wade and Harrod have not moved to dismiss that claim for

failure to state a claim.[3]  Therefore they have not articulated why Simmons' claim is so deficient that his request for a screening panel should be denied on this basis.

Wade and Harrod also argue that Simmons' request for a medical malpractice screening panel should be denied because Simmons has not shown that he would be able to pay the panel costs if he were to end up being taxed with them.  (ECF 61, at 6-7; ECF 62, at 4-5.)  This is not a legitimate ground for denying Simmons' motions.  Although the court's September 29 order directed Simmons to state in any renewed motion how he intended to pay for screening panel costs if taxed with them, the court cannot condition convening a screening panel upon a requesting party's ability to pay.  *Johnson v. Mehta*, 974 P.2d 597, 598 (Kan. 1999) (holding a district court does not have "the inherent authority to order prepayment of K.S.A. 65–4907 screening panel costs in the form of a deposit from the party requesting the panel").  Regardless, Simmons' Renewed Motion states that he would be willing to submit to an installment plan to pay panel costs, and his subsequent filings suggest that he now has at least $2,250 available to pay those costs.  (ECF 68, at 3; ECF 72.)  The court will therefore not deny the Renewed and Second Renewed Motions on this basis.

Simmons has substantially complied with the court's directives from the September 29 order, and Wade and Harrod have not challenged whether Simmons' allegations state a medical malpractice claim.  The Act contains mandatory language stating that a court "*shall* convene" a screening panel upon a party's timely request.  KAN. STAT. ANN. § 65-4901(a) (emphasis added).  It is not clear from Simmons' filings whether he truly understands the limits of a screening panel,

---

[3] A claim may survive screening under 28 U.S.C. § 1915A and still be subject to a motion to dismiss.  *See, e.g.*, *Harris v. Ruthenberg*, 62 F. Supp. 3d 793, 801 (N.D. Ill. 2014) (finding "no persuasive reason why a § 1915A screening should foreclose a post-screening dismissal of a complaint upon briefing by the parties represented by counsel").  "That the complaint may have survived an initial look by the judge, ought not be and is not dispositive."  *Id.*

particularly that the panel cannot grant him any relief, cannot issue findings on his disability and accommodation claims, and is not a substitute for an expert witness(es) on his medical malpractice claim. But even if Simmons seeks a medical malpractice screening panel for reasons other than what it was intended for (to encourage early settlement), Wade and Harrod have cited no authority suggesting that it is within the court's power to decline Simmons' request at this juncture. The court therefore grants the Renewed and Second Renewed Motions to the extent that it will convene two screening panels on Simmons' medical malpractice claim against Wade and Harrod, as set forth in further detail below.

**B.      Non-Malpractice Claims**

Wade and Harrod also argue that Simmons' request for a medical malpractice screening panel should be denied to the extent he seeks to have a panel review his disability and accommodation-related claims under the ADA and Rehabilitation Act. Simmons' Renewed Motion contains allegations that appear to relate to his ADA and Rehabilitation Act claims, and his Second Renewed Motion appears to focus primarily on those claims rather than the medical malpractice claim against Wade and Harrod. To the extent that Simmons asks the court to convene a screening panel as to Wade and Harrod on any alleged ADA and Rehabilitation Act violations, these motions are denied for at least two reasons. First, a screening panel is empowered only to review and issue recommendations on medical malpractice claims, not ADA or Rehabilitation Act claims. *See* KAN. STAT. ANN. § 65-4904(a) (stating the "panel shall make written recommendations on the issue of whether the health care provider departed from the standard of care in a way which caused the plaintiff . . . damage"). Second, the court's screening order did not allow Simmons' ADA and Rehabilitation Act claims to proceed against Wade and Harrod. (ECF 11, at 3.)

Simmons' Renewed and Second Renewed Motions also allege that Wade and Harrod and were deliberately indifferent to his medical needs.  The court's screening order allowed Simmons' § 1983 claim for lack of medical treatment to proceed against Wade and Harrod in their individual capacities.  (*Id.* at 5.)  But a § 1983 claim is not equivalent to a medical malpractice claim and is not within the purview of a medical malpractice screening panel.  *See* KAN. STAT. ANN. § 65-4904(a) (stating the "panel shall make written recommendations on the issue of whether the health care provider departed from the standard of care in a way which caused the plaintiff . . . damage").  Therefore, these motions are denied to the extent he seeks a screening panel on his § 1983 claim against Wade and Harrod.

### C.      Corizon and Cline

It is not clear whether Simmons intends to renew his request for a medical malpractice screening panel as to Corizon and Cline.  To the extent he does, the court denies his Renewed and Second Renewed Motions for the reasons set forth in the September 29 order.  *See Simmons*, 2020 WL 5802077, at *1-2 (declining to convene a screening panel as to Corizon and Cline because those defendants were not "healthcare providers" subject to the Act, and Simmons did not assert a medical malpractice claim against Cline).

## IV.    THE SCREENING PANELS

As set forth above, the court grants Simmons' Renewed and Second Renewed Motions to the extent that it will convene screening panels to review Simmons' medical malpractice allegations against Wade and Harrod.  Because Wade is an APRN and Harrod is a physician, the court will convene two panels and appoint a single chairperson.  The court will not appoint a chairperson at this time, however.  Instead, the court directs the parties to first designate appropriate healthcare providers as set forth below.

Simmons' Second Renewed Motion is titled "Requisition for Medical Malpractice Screening Panel [Using] Susan B. Allen Memoria[l] Hospital Diagnostic Imaging [Consultation] Report and Gregg Adam T. M.D." (ECF 59.)  It is not clear whether Simmons is asking that the court designate the named physician as a screening panel member.  To the extent that he does, his motion is denied.  As discussed below, it is not the court's responsibility at this juncture to designate panel members.  Further, Simmons has provided no information on whether the named physician is in the same profession as Harrod or is even willing to serve on a panel.

**A.    Designating Healthcare Providers**

Simmons, Wade, and Harrod must designate appropriate healthcare providers as follows:

- Simmons must designate two healthcare providers, one licensed in the same profession as Wade and one licensed in the same profession as Harrod;

- Wade must designate a healthcare provider licensed in the same profession; and

- Harrod must designate a healthcare provider licensed in the same profession.

These designations must be filed by **May 11, 2021**, and state the designated provider's profession, where he or she is employed, and whether the filing party has contacted the designated provider and confirmed that he or she is willing and available to serve on the screening panel.  The court reminds the parties that "[t]he state agency which licenses, registers, certifies or otherwise is responsible for the practice of any group of health care providers shall maintain and make available to the parties to the proceeding a current list of health care providers who are willing and available to serve on [a] screening panel."  KAN. STAT. ANN. § 65-4901(c).  The parties must file any objections to the other side's designation(s) by **May 25, 2021**.

In addition, the court orders Wade and Harrod to begin conferring with Simmons promptly regarding jointly selected healthcare providers for both panels.  The provider jointly selected for the Wade panel must be licensed in the same profession as Wade, and the provider jointly selected

10

for the Harrod panel must be licensed in the same profession as Harrod.  Joint designations must be filed by **May 25, 2021**, and state the designated provider's profession, where he or she is employed, and whether the filing parties have contacted the designated provider and confirmed that he or she is willing and available to serve on the screening panel.  If the parties are unable to jointly select healthcare providers for their respective panels, motions requesting that the court appoint a third panel member are due by **June 1, 2021**.

After the court has reviewed the designations and resolved any disputes, the court will determine if it is appropriate to appoint a panel chairperson.[4]  The court also previously informed Simmons that he should familiarize himself with the Act and the associated Kansas Supreme Court Rule because convening a medical malpractice screening panel imposes various requirements on a plaintiff.  *Simmons*, 2020 WL 5802077, at *3-4.  The court again reminds Simmons that it is his responsibility to designate appropriate providers by the deadline set forth above and to work with Wade and Harrod to make joint designations, if possible.  *See Macias v. Correct Care Sols, Inc.*, 367 P.3d 311, 314 (Kan. Ct. App. 2016) (stating that it was the pro se incarcerated plaintiff's "responsibility to appoint a screening panel member").  If he fails to comply with these obligations, the court will likely determine that it is not appropriate to appoint a chairperson and will quash the screening panels.

---

[4] The Act requires the court to appoint a chairperson, but it does not specify when.  *See* KAN. STAT. ANN. § 65-4901(b).  The time for designating a chairperson is set forth in a Kansas Supreme Court Rule, which states that the notice convening the panel must include the chairperson's name.  KAN. S.C. RULE 142(e).  Although federal courts have generally found that screening panel statutes confer substantive rights, *see, e.g.*, *Daigle v. Me. Med. Ctr., Inc*., 14 F.3d 684, 689-90 (1st Cir. 1994), the Kansas Supreme Court Rule is procedural and not binding on this court, *see Roadenbaugh v. Correct Care Sols., LLC*, No. 08-2178-CM-GLR, 2009 WL 735136, at *2 (D. Kan. Mar. 19, 2009) (construing that rule as "one to govern the procedure to be followed in the state courts of Kansas and not necessarily binding upon the procedure in federal courts").

B.      Providing Documents to the Panel

A plaintiff is responsible for providing the panel chairperson and opposing parties with "all medical records, medical care facility records, x-rays, test results, treatises, documents, tangible evidence, and written contentions on which the plaintiff relies."   KAN. S.C. RULE 142(h). Simmons' Supplement states that he is unable to obtain his medical records because offenders are not permitted copies of those records under KDOC policy.   It appears that Simmons filed a grievance regarding his inability to obtain copies of his medical records for a screening panel, and a KDOC representative again denied his request for physical copies.  (*See* ECF 44-1.)  Because the court is not appointing a chairperson at this time, Simmons is not yet required to furnish the screening panel with the medical records and written contentions on which he relies.  The court will set a deadline for Simmons, Wade, and Harrod to provide the relevant screening panel with records and written contentions at a later date, if necessary.  If Simmons is still unable to obtain copies of his medical records at that time, the court may require Wade and Harrod to provide all pertinent records and materials to the screening panels.

C.      The Court Will Not Stay the Case.

Simmons' reply in support of the Renewed Motion appears to ask the court to stay the case. (ECF 68, at 3 ("Please stayed [sic] pending review of the medical review panel . . . .").)  "Generally, the Court will not consider relief requested for the first time in a reply brief."  *In re Bank of Am. Wage & Hour Emp. Practices Litig.*, 275 F.R.D. 534, 537 (D. Kan. 2011); *see also* D. KAN. RULE 7.1(a) ("All motions . . . must be filed in writing with the clerk. A brief or memorandum must accompany all motions . . . .").  Further, the court's September 29 order already stated that the court will not stay proceedings pending a medical malpractice screening panel's review.  *Simmons*, 2020 WL 5802077, at *3.  A stay is not mandatory when a panel is convened.  *See Soto-Montes v.*

*Corizon Health, Inc.*, No. 16-3052-JAR-GEB, 2018 WL 1083260, at *5 (D. Kan. Feb. 28, 2018) (discussing KAN. S.C. RULE 142(g)).  Simmons' medical malpractice claim is just one portion of this case.  The panel's findings will have no bearing on his other claims, and a stay would unnecessarily delay resolution of those claims.  *See also, e.g.*, *Sperry v. Corizon Health, Inc.*, No. 18-3119-EFM-ADM, 2020 WL 1303966, at *4 (D. Kan. Mar. 19, 2020) (denying a stay where a medical malpractice claim was but one among multiple other claims that are not subject to a screening panel or impacted by its findings).  The court therefore declines to stay the case.

## V.     SIMMONS' MISCELLANEOUS REQUESTS FOR RELIEF

The court now turns to Simmons' miscellaneous requests for relief in his Supplement and his motion for an order requiring the KDOC to disburse funds from his account to pay the screening panel costs.

### A.     Production of Medical Records

Simmons' Supplement states that he "is entitled to have [his] medical record[s] for evidence." (ECF 44, at 2.)  To the extent Simmons is asking the court to compel KDOC to produce these records to him, that request is denied.  KDOC is not a party to this case, and Simmons has not requested issuance of a subpoena to KDOC for his medical records.  Accordingly, the court does not presently have a basis upon which to order KDOC to produce documents to Simmons.

This Supplement also states that Simmons needs "the court to order Potosi Corr. Center to turn over his] medical record[s]."  (*Id.* at 3.)  Simmons was apparently incarcerated at Potosi Correction Center ("Potosi") in Missouri before he was transferred to the El Dorado Correctional Facility in Kansas.  (*See* ECF 60, at 4; ECF 30, at 3.)  Simmons now seeks records relating to his eye problems, and he states that these records would be evidence for the screening panel.  (ECF 44, at 3.)  It is unclear what relevance these records would have to Simmons' medical malpractice

claim, which centers on Simmons' alleged back problems and a skin rash.  To the extent Simmons seeks records from Potosi to support his ADA and Rehabilitation Act claims, it is not within a medical malpractice screening panel's purview to review and issue findings on such claims, as discussed above.  Regardless, Potosi is also a non-party, and no valid subpoena has been issued to Potosi for the records Simmons seeks.[5]  Like KDOC, the court does not presently have the power to order Potosi to produce documents to Simmons.  This request is also denied.

### B.   Appointment of Counsel

Simmons' Supplement also asks the court to appoint him counsel.  (*Id.*)  "There is no constitutional right to appointed counsel in a civil case."  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989) (per curiam).  Where the court grants a litigant leave to proceed in forma pauperis ("IFP"), a district court "has discretion to request an attorney to represent [that] litigant" under to 28 U.S.C. § 1915(e)(1).  *Johnson*, 466 F.3d at 1217.  Here, Simmons does not meet the statutory requirements for appointment of counsel under § 1915(e)(1) because he is not proceeding IFP. (*See* ECF 9, at 9 (denying Simmons' motion to proceed IFP as moot after he paid the filing fee).) Although Simmons suggests he is indigent, the court does not presently have adequate information before it to determine his financial status.  *See* 28 U.S.C. § 1915(a)(2) (stating that a prisoner seeking IFP status must file an affidavit with information on assets and a certified copy of the prisoner's trust fund account statement for the prior 6-month period).

Even if Simmons were to qualify for IFP status (which the court does not find he does), he has not established that appointment of counsel would be warranted.  In deciding whether to appoint an attorney to represent an indigent party, the court considers the following factors: (1) the

---

[5] Simmons has previously sought to subpoena Potosi, and the court denied these motions without prejudice and gave him guidance on filing a renewed motion.  (ECF 63 & 70.)

merit of the party's claims; (2) "the nature and complexity of the factual and legal issues"; and (3) the party's "ability to investigate the facts and present [the] claims." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004).   A party requesting counsel has the burden "to convince the court that there is sufficient merit to [the] claim to warrant the appointment of counsel." *Id*.   The fact that counsel could assist in presenting the "strongest possible case" is not enough because "the same could be said in any case." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006).

Simmons' Supplement does not address the merits of his claims.   After reviewing the operative complaint and the other filings, the court cannot say at this stage that Simmons' claims are any more meritorious than medical malpractice and civil rights claims asserted by other incarcerated litigants who represent themselves.   While the factual and legal issues in this case may arguably be more complex to the extent that they involve medical treatment, Simmons appears to be reasonably capable of preparing his case and presenting his claims.   He has filed a number of motions, including those seeking a medical malpractice screening panel and those seeking discovery from third-party Potosi.   Further, he has demonstrated the ability to conduct his own investigation and obtain documents related to his claims.   (*See, e.g.*, ECF 47-1 (filing 447 pages of exhibits in support of his partial summary judgment motion); ECF 59-1, at 1-4 (Simmons' medical records).)   To the extent that Simmons has to overcome hurdles obtaining his medical records under KDOC's policy, discovery is now open so he may pursue formal discovery avenues to obtain these documents.   For all of these reasons, the court declines to appoint Simmons counsel at this time.   He may, however, renew his motion at a later procedural juncture.

C.    **Simmons' Screening Panel Fees Motion**

Simmons' final motion seeks an order requiring KDOC to pay $2,250 to the court out of his account for the medical malpractice screening panel.  (ECF 72.)  Simmons explains that he asked KDOC to send the court $2,250 from his account to pay for a panel, but KDOC denied the request.  In doing so, KDOC stated that there was no court order requiring payment and no order granting Simmons' renewed motions requesting a screening panel.  (ECF 72-1.)

This motion is denied as premature because no screening panel-related costs are currently due, nor would they be payable to the court.  As discussed above, costs are "paid by the side in whose favor the majority opinion is written."  KAN. STAT. ANN. § 65-4907(b).  No opinions have been issued by a screening panel yet, so it is still uncertain as to what party or parties—if any—will be required to pay costs.  Furthermore, the $2,250 figure mentioned in the court's September 29 order referred to costs that would possibly be assessed against Simmons for *one* panel, but two panels are required here.  In addition, KDOC is not a party in this case.  The court is therefore not empowered at this procedural juncture to order KDOC to pay out Simmons' funds.  Simmons may re-raise this issue if and when he is required to pay any screening panel costs.

## VI.    CONCLUSION

Simmons' Renewed and Second Renewed Motions are granted to the extent that the court will convene two medical malpractice screening panels as to Simmons' medical malpractice claims against Wade and Harrod.  The parties must designate healthcare providers in accordance with the schedule set forth above.  The court will determine whether to appoint a chairperson for both screening panels at a later date or whether the screening panels should be quashed.  These motions are otherwise denied, including to the extent that Simmons seeks a medical malpractice screening panel as to non-malpractice claims or as to Cline or Corizon.

**IT IS THEREFORE ORDERED** that Simmons' renewed Motions for a Medical Malpractice Screening Panel (ECF 35 & 59) are granted in part and denied in part, as set forth above.

**IT IS FURTHER ORDERED** that Simmons' motion to compel and motion for appointment of counsel contained in the Supplement (ECF 44) are denied, but his request for appointment of counsel is denied without prejudice.

**IT IS FURTHER ORDERED** that Simmons' motion for an order requiring the KDOC to disburse funds from his account to pay for a screening panel (ECF 72) is denied.

**IT IS FURTHER ORDERED** that the clerk's office mail a copy of this order to plaintiff Willie Simmons via regular and certified mail.

**IT IS SO ORDERED.**

Dated April 20, 2021, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge