IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIE SIMMONS,

    Plaintiff,

v.

SAM CLINE, *et al.*,

    Defendants.

Case No. 20-3096-HLT-ADM

## **MEMORANDUM AND ORDER**

This matter comes before the court on defendants Corizon Health, Inc. ("Corizon") and William Wade's ("Wade") Motion to Stay Medical Malpractice Screening Panel (ECF 95) and defendants Wade and Gordon Harrod's ("Harrod") Motion to Quash Medical Malpractice Screening Panels (ECF 97). Pro se incarcerated plaintiff Willie Simmons ("Simmons") previously requested that the court convene a medical malpractice screening panel pursuant to the Kansas Medical Malpractice Screening Panels Act, KAN. STAT. ANN. § 65-4901 *et seq.* (the "Act"). The court granted Simmons' request and stated that the court would convene two screening panels to review Simmons' medical malpractice claim: one as to Wade, an Advanced Practice Registered Nurse ("APRN"), and another as to Harrod, a physician. *See Simmons v. Cline*, No. 20-3096-HLT-ADM, 2021 WL 1546219, at *1 (D. Kan. Apr. 20, 2021). The court instructed the parties to designate healthcare providers to serve as panel members, after which the court would determine whether to appoint a panel chairperson and provide further direction. The court warned Simmons that it would likely quash the screening panels if he did not meet his panel-related obligations.

The court's deadlines have now passed, and Simmons—despite the court's warning—has not met his panel-related obligations and properly designated providers to serve as panel members.

In addition, since the court's order, Wade and Harrod filed dispositive motions challenging the viability of Simmons' medical malpractice claim. (ECF 89 & 98.) As discussed below, the court now grants Wade and Harrod's motion and quashes the screening panels. As a result, Corizon and Wade's motion to stay the screening panel as to Wade is denied as moot.

I. **BACKGROUND**

Simmons is incarcerated at El Dorado Correctional Facility. His broad complaint alleges violations of the Americans with Disabilities Act and Rehabilitation Act, a 42 U.S.C. § 1983 claim for violations of his Eighth Amendment rights, a negligence claim, and a medical malpractice claim. (ECF 10.) Simmons names Wade and Harrod as defendants, as well as Sam Cline ("Cline"), who is the Warden of the El Dorado Correctional Facility, and Corizon, which contracts with the Kansas Department of Corrections to provide medical services to inmates.

A. **The Court's First Order Denying Simmons' Request for a Screening Panel**

Simmons originally filed a motion for a medical malpractice screening panel early in this case, which the court denied. *See Simmons v. Cline*, No. 20-3096-DDC-ADM, 2020 WL 5802077, at *4 (D. Kan. Sept. 29, 2020). Simmons' single-page motion generally alleged that all defendants failed to provide him with medical treatment on a variety of complaints that appeared to go beyond the scope of the malpractice claim Simmons pleaded. With respect to Corizon and Cline, the court denied the motion because they are not "healthcare providers" subject to the Act, and Simmons did not assert a medical malpractice claim against Cline. *Id.* at *1-*2. As to Wade and Harrod, the court noted that it was unclear whether Simmons was alleging these defendants personally rendered Simmons care (or decided not to) or how specifically their respective actions deviated from the standard of care. *Id.* at *2. The court therefore denied Simmons' motion with respect to these defendants but allowed Simmons to renew his motion as to Wade and Harrod in accordance

with the court's directives. *Id.* at *4 ("Any renewed motion as to Wade and Harrod must specify the ways in which each individual allegedly deviated from the standard of care, and those allegations must be limited to the contours of what Simmons has alleged in the amended complaint.").

The court also "encourage[d] [Simmons] to become familiar with all provisions of the Act and with Kansas Supreme Court Rule 142." *Id.* at *3. The court told Simmons that, if he renewed his request for a screening panel, "he should be aware of multiple time-sensitive deadlines that would be triggered by the Act and Rule 142." *Id.* The court described some of these deadlines, including those that would generally apply to designating healthcare providers to serve on a screening panel. *See id.* The court cautioned Simmons that, if he chose to file a renewed motion, the court would expect him to "timely comply with the requirements of the Act and Rule 142 while simultaneously prosecuting this case." *Id.* at *4.

**B.     The Court's Subsequent Order Granting Simmons' Renewed Request**

Simmons thereafter filed two motions renewing his request for a medical malpractice screening panel, which the court granted in part in an order dated April 20, 2021. *See Simmons*, 2021 WL 1546219, at *8. Simmons' renewed motions attempted to comply with the court's prior directives, as he had set forth the specific ways in which he contended Wade and Harrod committed medical malpractice, and those allegations fell within the contours of the claim in Simmons' operative complaint. *Id.* at *3. Although Harrod argued that Simmons' motions should be denied because he had no viable medical malpractice claim, the court pointed out that Simmons' claim survived screening, and Wade and Harrod had not thereafter moved to dismiss it. *Id.* Thus, the court found that Wade and Harrod had "not articulated why Simmons' claim [was] so deficient that his request for a screening panel should be denied on this basis." *Id.* Ultimately, the court

3

granted Simmons' renewed motions to the extent that it agreed to convene two screening panels on his medical malpractice claim against Wade, an APRN, and Harrod, a physician. The court pointed to the Act's mandatory language and the fact that Wade and Harrod had "cited no authority suggesting that it [was] within the court's power to decline Simmons' request at [that] juncture." *Id.* at *4.

The court directed the parties to designate healthcare providers to serve on the two screening panels. The court ordered Simmons, Wade, and Harrod to designate their chosen providers by May 11. The court instructed Simmons to "designate two healthcare providers, one licensed in the same profession as Wade and one licensed in the same profession as Harrod" and reminded him that the applicable state licensing agencies maintained lists of providers who are willing and able to serve on a panel. *Id.* at *5. The court told the parties to include the following information in their filed designations: the "provider's profession, where he or she is employed, and whether the filing party has contacted the designated provider and confirmed that he or she is willing and available to serve on the screening panel." *Id.*

The court also ordered Wade and Harrod to begin conferring with Simmons promptly on jointly-selected providers for the screening panels and set May 25 as the deadline for the parties to file their joint designations, to contain the same information set forth above. In addition, the court directed the parties to file any objections to the initial designations by the same date, and, if the parties were unable to jointly select providers for their respective panels, to file a motion requesting that the court appoint a third panel member by June 1. The court stated that it would first review the designations and resolve any disputes before the court determined whether to appoint a panel chairperson. *Id.* at *6.

The court reiterated that it had "previously informed Simmons that he should familiarize himself with the Act and Rule 142 because convening a medical malpractice screening panel imposes various requirements on a plaintiff." *Id.* (citing *Simmons*, 2020 WL 5802077, at *3-*4). Again, the court reminded Simmons that it was "his responsibility to designate appropriate providers by the deadline . . . and to work with Wade and Harrod to make joint designations, if possible." *Id.* The court warned Simmons that "[i]f he fail[ed] to comply with these obligations, the court will likely determine that it is not appropriate to appoint a chairperson and will quash the screening panels." *Id.* The clerk's office sent the order to Simmons by regular and certified mail, and it was delivered to his address of record. (ECF 83.)

## II. WADE AND HARROD'S MOTION TO QUASH

The court turns now to Wade and Harrod's motion asking the court to quash the screening panels because Simmons did not properly designate his chosen healthcare providers. (ECF 97.) Wade and Harrod state that Simmons filed a document that he titled a certificate of service of "Expert Witnesses Rule 26(a) Disclosure" on May 7 (*see* ECF 87-1, at 1-4), which he may have intended to be the designations the court ordered him to file by May 11.[1] That document identifies two individuals: Dr. Karen Blakman ("Blakman") and Nurse Practitioner Kendra Wolef ("Wolef"). (*See id.*) But, as Wade and Harrod point out, Simmons does not state whether he contacted either individual to confirm that they would be willing to serve on the screening panels. (*See* ECF 97, at 2.) Wade and Harrod therefore ask the court to quash the panels.

Simmons' response to Wade and Harrod's motion was due by June 1. Simmons filed no response by that date, nor has he filed any response since. Given that Simmons does not oppose

---

[1] Simmons May 7 filing references the screening panels, but he also states that he is disclosing expert witnesses in accordance with the court's scheduling order and FED. R. CIV. P. 26(a).

5

the motion, the court grants the motion to quash as uncontested and quashes the screening panels solely on that basis. *See, e.g.*, D. KAN. RULE 7.4(b) ("Ordinarily, the court will grant [an uncontested] motion without further notice.").

The court also grants Wade and Harrod's motion on the merits. The court's September 29 order told Simmons that he should familiarize himself with the Act and Rule 142, and explained that "multiple time-sensitive deadlines . . . would be triggered" if the court were to convene a screening panel. *Simmons*, 2020 WL 5802077, at *3. The court's April 20 order once again reiterated Simmons' panel-related obligations and specifically told him that it was not the court's responsibility to designate panel members on his behalf. *See Simmons*, 2021 WL 1546219, at *5 ("[I]t is not the court's responsibility at this juncture to designate panel members."). Nothing in the Act empowers the court to order providers to serve on screening panels; the commitment must be taken on voluntarily. The court therefore ordered the parties to include in their designations "whether the filing party has contacted the designated provider and confirmed that he or she is willing and available to serve on the screening panel." *Id.*

But Simmons' May 7 filing did not include this information. Simmons lists Wolef's work address but does not describe any efforts to contact her about serving on a screening panel, or her position on serving as a panel member. For Blakman, Simmons states that he was unable to obtain her home address because of safety and security concerns. He lists what appears to be a work address for her, but—again—he does not state whether he attempted to contact her to learn whether she would be willing and available to serve on the screening panel. Rather, as Wade and Harrod point out, Simmons appears to believe that the court will order Blakman to serve on a panel, stating that she would "be available if the court sent a court order to the licensed doctor." (ECF 87-1, at 1.) As discussed above, however, the court cannot order a third-party provider to serve on a

6

medical malpractice screening panel. It is Simmons' obligation to find providers who are willing and available to serve on a panel, which is an obligation the court discussed in both prior orders.

A court may quash a medical malpractice screening panel when the party requesting the panel fails to meet its panel-related obligations. *See Macias v. Correct Care Sols., Inc.*, 367 P.3d 311, 315 (Kan. Ct. App. 2016) (discussing the district court's order dismissing screening panel proceedings after, among other things, the pro se incarcerated plaintiff failed to designate a screening panel member); *White v. Vinzant*, 773 P.2d 1169, 1171 (Kan. Ct. App. 1989) (same, after the plaintiff failed to submit written contentions, and noting the parties also failed to designate providers or file the records and supporting evidence required by Rule 142). And here, the court specifically warned Simmons that it would likely quash the screening panels if he did not meet his panel-related obligations. *Simmons*, 2021 WL 1546219, at *1. Despite that warning, Simmons has not appropriately designated providers in accordance with the court's prior order and as required by the Act. He has therefore failed to meet his panel-related obligations.

Further, in the time since the court's April 20 order, Wade and Harrod have filed summary judgment motions on Simmons' medical malpractice claim. (ECF 89 & 98.) "[A] medical malpractice cause of action is a condition precedent to convening a medical malpractice screening panel." *Webber v. Schmidt*, 119 P.3d 1187, 2005 WL 2347803, at *3 (Kan. Ct. App. 2005). A court may quash a screening panel where a plaintiff has no medical malpractice claim. *See id.* (finding the district court "correctly terminated the screening panel because [the plaintiff's] medical malpractice claim . . . failed as a matter of law"); *see also Macias*, 367 P.3d at 315 (discussing the district court's reasoning for dismissing screening panel proceedings, which included that many of the pro se incarcerated plaintiff's allegations were not related to medical negligence). Here, Wade and Harrod contend that Simmons failed to exhaust his administrative

7

remedies as to his medical malpractice claim, which is a requirement under the Prison Litigation Reform Act. *See Simmons v. Cline*, No. 20-3096-HLT-ADM, 2021 WL 2351046, at *2 (D. Kan. June 9, 2021) (staying discovery based on defendants' summary judgment arguments). Thus, it is questionable whether Simmons has a viable medical malpractice claim upon which to convene a screening panel.

### III. CONCLUSION

For the reasons stated above, Wade and Harrod's motion is granted. The court quashes the medical malpractice screening panels that it had previously agreed that it would convene. Because the court is now quashing the screening panels, Corizon and Wade's motion to stay the Wade screening panel is denied as moot.

**IT IS THEREFORE ORDERED** that defendants William Wade and Gordon Harrod's Motion to Quash Medical Malpractice Screening Panels (ECF 97) is granted.

**IT IS FURTHER ORDERED** that defendants Corizon Health, Inc. and William Wade's Motion to Stay Medical Malpractice Screening Panel (ECF 95) is denied as moot.

**IT IS FURTHER ORDERED** that the clerk's office mail a copy of this order to plaintiff Willie Simmons via regular and certified mail.

**IT IS SO ORDERED.**

Dated June 24, 2021, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge